UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AISHA BROOKS, | CASE NO. 1:08CV2608 |
| Plaintiff, | JUDGE KATHLEEN O'MALLEY<br>Magistrate Judge George J. Limbert |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | **REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |
| Defendant. | |

Aisha Brooks ("Plaintiff"), seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision finding that she failed to show that her impairments met or equaled the requirements of mental retardation, as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C ("Listing 12.05C"). ECF Dkt. #13. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision.

## I. PROCEDURAL HISTORY

On July 21, 2004, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 1, 2003[1]. ECF Dkt. #13 at 1; ECF Dkt. #15 at 1, both referring to Tr.

---

[1] The undersigned notes that the actual applications are not in the transcript, but both Plaintiff and Defendant have indicated the dates used in this Report and Recommendation as the protective filing and onset date of disability. Further, both Plaintiff and Defendant refer to the ALJ's decision referencing these dates as well.

at 13. Plaintiff apparently alleged disability due to a learning disability, internal bleeding, stomach pain, migraines, a January 2005 surgery, and sickle cell anemia. Tr. at 41-42, 47. The SSA denied Plaintiff's claim initially and upon reconsideration. *Id*. at 41-49. On May 26, 2005, Plaintiff filed a request for a hearing before an ALJ and on July 2, 2007, Plaintiff appeared with counsel at the hearing. *Id*. at 50, 308. The ALJ heard testimony from Plaintiff and Dr. Larry Kravitz, a medical expert. *Id*.

On July 24, 2007, the ALJ[2] issued a written decision denying Plaintiff's claim. Tr. at 13-24. She found that Plaintiff had no physical impairments causing disability because Plaintiff's counsel indicated at the hearing that Plaintiff had none. *Id.* at 16. The ALJ did find that Plaintiff had the severe impairment of borderline intellectual functioning. *Id*. In examining whether Plaintiff's borderline intellectual functioning met or equaled Listing 12.05C, the ALJ noted that the only evidence establishing Plaintiff's onset of subaverage intellectual functioning before the age of 22 was documentation showing that Plaintiff was enrolled in developmentally handicapped ("DH") school classes and a 2004 psychological evaluation conducted after the age of 22 which showed a verbal IQ of 73, a performance IQ of 70 and a full-scale IQ of 69. *Id*. at 16. The ALJ rejected the assertion that Plaintiff's DH designation and participation in special education classes established the onset of mental retardation before age 22 because the evidence failed to establish why Plaintiff received special education services, which according to Ohio Administrative Code 3301-51-06, could be not only for mental retardation, but also for, *inter alia*, a hearing impairment, emotional disturbance, a specific learning disability, or multiple disabilities. *Id.* at 17. Nevertheless, the ALJ gave Plaintiff "every benefit" and found that her current IQ was comparable to her IQ before she turned 22 years old and thus she had a mental impairment with an onset prior to the age of 22. *Id*. at 16-17.

---

[2] The undersigned notes that the person who signed the ALJ decision is not the person captioned as the ALJ on the decision and is not the same person identified as presiding over the hearing. Tr. at 13, 24, 308. Neither party mentions this discrepancy or challenges it.

Despite giving her "every benefit" as to the current IQ score, the ALJ then invalidated Plaintiff's full scale IQ score of 69 based upon a lack of medical records establishing mental retardation prior to the age of 22, the opinions of the medical expert and the non-treating consultative psychologist who diagnosed borderline intellectual functioning and not mental retardation, and Plaintiff's activities of working part-time as a cashier and home health aide, driving, and taking care of her children, showed that the IQ score was not an accurate measure of her intellectual capacity. *Id*. at 16. The ALJ noted that the non-treating consultative psychologist who administered the IQ test opined that a diagnosis of borderline intellectual functioning was more appropriate than that of mild mental retardation based upon Plaintiff's memory and adaptive functioning scores and the medical expert agreed. *Id*. at 18. The ALJ therefore rejected the validity of Plaintiff's "one-time full-scale IQ score of 69, which was accompanied by a performance IQ score of 70 and a verbal IQ score of 73." *Id.* at 19.

The ALJ also rejected the argument of Plaintiff's counsel that Plaintiff's third-grade reading level constituted an additional mental impairment that met the latter portion of Listing 12.05C which requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. at 19. The ALJ relied upon the testimony of the medical expert, who testified that poor reading ability is associated with and indicative of mild mental retardation or borderline intellectual functioning. *Id.*

The ALJ concluded that even if Plaintiff had established an onset of subaverage intellectual functioning with deficits in adaptive functioning that arose before the age of 22, she did not meet or equal the other two requirement of Listing 12.05C as she did not present either a valid IQ score between 60 and 70 and an additional mental impairment that imposed a significant work-related limitation of function beyond that already presented by her borderline intellectual functioning. Tr. at 20. The ALJ went on to find that even if she accepted the full-scale IQ score of 70 as valid, she would still find that Plaintiff's third-grade reading level did not constitute an additional mental

impairment under Listing 12.05C and thus Plaintiff would still not meet the Listing. *Id.*

Having concluded that Plaintiff's impairment did not meet or equal Listing 12.05C, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of unskilled light exertional work, with the mental residual capacity to: understand, remember and carry out unskilled, simple, repetitive tasks; maintain attention and concentration for short periods of time sufficient to perform unskilled tasks; to interact appropriately with the general public, supervisors and co-workers on a frequent basis; and to respond appropriately to changes in the work setting. Tr. at 20. She further found that despite Plaintiff's borderline intellectual functioning, she demonstrated the mental capacity to perform unskilled tasks due to her successful performance of many prior jobs from 2004-2006. *Id*.

The ALJ concluded that jobs existed in the national economy that Plaintiff could perform with the RFC she determined. Tr. at 23. The ALJ admitted that she did not take testimony from the vocational expert that was present at the hearing, but she found that Plaintiff's moderate deficits in concentration, persistence and pace did not significantly erode the occupational base at the light exertional level, "especially in light of the claimant's past abilities, and her performance of those many jobs described above that required competitive levels of concentration, persistence, and pace." *Id*. at 23. The ALJ found that Plaintiff could perform the jobs that she had performed in the past and she could adjust to other work that existed in significant numbers in the national economy. *Id*.

On November 4, 2008, Plaintiff requested that the SSA Appeals Council review the ALJ's decision. Tr. at 8. On September 11, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Commissioner. *Id*. at. 4-7. Plaintiff now seeks judicial review of the ALJ's decision under 42 U.S.C. § 1383(c). ECF Dkt. #1. Specifically, Plaintiff asserts that the ALJ lacked substantial evidence for her decision finding that Plaintiff failed to meet the requirements of Listing 12.05C. ECF Dkt. #13 at 1.

## II. STEPS TO EVALUATE THE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he -or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, the Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905

F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id*.; *Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984). Furthermore, in reviewing the ALJ's decision, deference is given to the ALJ's credibility determinations. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993). A reviewing court may not retry the case, resolve factual or evidentiary conflicts, or decide questions of credibility. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

### IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in finding that she did not meet or equal Listing 12.05C because the evidence of record supported a finding that she met or equaled that Listing's components. ECF Dkt. #13 at 5. For the following reasons, the undersigned recommends that the Court reject Plaintiff's assertion and affirm the ALJ's finding that Plaintiff's impairments did not meet or equal Listing 12.05C.

In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that her impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> Listing 12.05C provides in relevant part:
>
>> 12.05 Mental retardation: Mental retardation refers to significantly subaverage. general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>>
>> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>>
>> \*   \*   \*
>>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function...

Listing 12.05C.

In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) she must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) she must establish that she meets the first requirement of Listing 12.05C by showing that she has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) she must establish that she meets the second requirement of Listing 12.05C by showing she has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00(A)., 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Daniels v. Comm'r of Social Security*, No. 02-3224, 2003 WL 21774004 at n1 (6th Cir. July 30, 2003), unreported; *Cooper v. Comm'r of Social Security*, No. 06-5606, 2007 WL 543059 at \*1 (6th Cir. Feb. 15, 2007), unreported.

In an attempt to meet the first component of the Listing, that the evidence demonstrated or supported the onset of the impairment before age 22, Plaintiff points to her school records which show that she was in DH classes. ECF Dkt. #13 at 5. She reasons that since the medical expert at the hearing acknowledged that DH means developmentally handicapped, and he acknowledged that DH generally means someone who is mentally retarded, she meets this part of Listing 12.05C.

-7-

The undersigned notes that the ALJ rejected this assertion, citing a lack of evidence to show that Plaintiff received DH services due to mental retardation. Tr. at 17. The ALJ cited Ohio Administrative Code 3301-51-06 and indicated that this section provided that special education and other related services could be provided to a child who has other impairments besides mental retardation, such as a hearing impairment, an emotional disturbance, autism, a learning disability, any combination of impairments or any other health impairment. *Id*. The ALJ found that no evidence was presented establishing that Plaintiff had mental retardation as opposed to some other impairment or combination of impairments which would require DH services and special education classes. *Id*. Nevertheless, "giving the claimant every benefit," the ALJ found that Plaintiff met the first component of the Listing based upon her current IQ test results because IQ scores create a rebuttable presumption of a fairly constant IQ throughout a person's life and therefore the current IQ was comparable to Plaintiff's IQ before she turned 22 years old. Tr. at 17.

The undersigned questions whether the ALJ benefitted Plaintiff by finding that her current IQ was the same as that existing before the onset age of 22 since the ALJ ultimately rejected Plaintiff's current full-scale IQ score after considering the diagnoses advanced by the consultative examiner and the medical expert of borderline intellectual functioning based upon higher memory and adaptive IQ scores and Plaintiff's daily activities and vocational achievements. *Id*. at 141. Therefore, it was not beneficial to Plaintiff to presume that this particular IQ score would be constant throughout Plaintiff's life when the full-scale IQ score indicated mild mental retardation, but other parts of the IQ test exceeded mild mental retardation and the psychologists believed that Plaintiff's activities and prior work history after age 22 placed her in the borderline intellectual functioning range. In other words, the result of Plaintiff's IQ testing could have been affected as Plaintiff's knowledge and capabilities most likely increased with age and experience.

Regardless of whether Plaintiff benefitted from the ALJ's acceptance of the full-scale IQ score as indicative of Plaintiff's intellectual functioning prior to the age of 22, the undersigned agrees with the ALJ's analysis in concluding that Plaintiff's impairments did not meet or equal

-8-

Listing 12.05C. Plaintiff shoulders the burden of establishing that she meets all of the components of Listing12.05C, including the diagnostic description of mental retardation. In *Cooper*, 2007 WL 543059, at **1, the Sixth Circuit Court of Appeals upheld the district court's denial of social security benefits to the claimant on the basis that he failed to establish mental retardation. The Court held that the claimant failed to establish that his impairment met the Listings because a psychologist and examiner had diagnosed him with borderline intellectual functioning rather than mental retardation and he performed activities inconsistent with mental retardation, such as performing semiskilled work, playing a guitar and riding a motorcycle. In *West v. Commissioner Social Sec. Admin.*, No. 06-5763, 2007 WL 1991059 at *5 (6th Cir. July 05, 2007), unreported, the claimant had two psychological evaluations (one was conducted by a psychologist and one was not), and neither evaluator diagnosed him with mental retardation. *Id*. The psychologist diagnosed the claimant with borderline intellectual functioning and adjustment disorder, but not mental retardation. *Id*. The Sixth Circuit held that the medical evidence supported the ALJ's finding that the claimant did not satisfy Listing 12.05C. *Id*.

The case at bar is similar to both *Cooper* and *West* because Dr. Konieczny, the non-treating consultative psychologist, examined Plaintiff and indicated that she obtained a valid Verbal IQ of 73, Performance IQ of 70, and Full Scale IQ of 69. Tr. at 139. However, he chose to diagnose Plaintiff with borderline intellectual functioning rather than mild mental retardation based upon her memory and adaptive functioning test results which extended beyond that typical for someone suffering from mild mental retardation. *Id*. at 140. Dr. Konieczny was aware that Plaintiff had been in special education classes and had repeated the fifth grade. *Id*. at 138. Yet, Dr. Konieczny did not advance a diagnosis of mild mental retardation. In fact, he offered no other diagnosis except for borderline intellectual functioning. Therefore, the undersigned recommends that the Court find that the ALJ's analysis pointing to Dr. Konieczny's diagnosis is sufficient to conclude that Plaintiff has failed to carry her burden with respect to Listing 12.05C.

The Court should also find substantial evidence to support the ALJ's reliance upon the findings and conclusions of Dr. Kravitz, the medical expert, who agreed with Dr. Konieczny's borderline intellectual functioning diagnosis. Dr. Kravitz had noted that Plaintiff's functional abilities were greater than one who suffered from mild mental retardation in that she lived independently and cared for her two children, she has a driver's license, she received certification as a State Test Nurse's Assistant and successfully performed as a nurse's aide, and she successfully worked as a cashier in the past. Tr. at 18.

Generally, an ALJ must presume that IQ scores are "fairly constant;" therefore, a post-developmental IQ score indicates a similar level of intellectual functioning during the developmental period. *Bilka v. Comm'r of Social Security,* 252 F.Supp.2d 472, 475 (N.D.Ohio 2002), quoting *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001). However, this presumption can be rebutted by other evidence, as explained in *Bilka*. In *Bilka*, the court noted that the Sixth Circuit refused to accept an IQ score of 66 produced when the claimant was over age 22 because of evidence of past vocational and academic achievements. 252 F.Supp.2d 472, 475-76 (N.D.Ohio 2002), citing *McDonald v. Sec'y of Health & Human Servs.,* 786 F.2d 1165, 1986 WL 16598 at *5 (6th Cir. 1986), unreported. The *Bilka* court applied the Sixth Circuit's holding and concluded that the claimant who worked as a die cast operator for 20 years and who had IQ tests prior to age of 22 outside of the range required for Listing 12.05C was not disabled. *Bilka*, 252 F.Supp.2d at 476.

Here, Plaintiff worked various part-time jobs as a cashier and as an aid for a home care network service. Tr. at 138. She worked as a cashier at Wendy's thirty hours per week for over one year and worked at Ritchie's Market on a part-time basis because it was the only position that was open at the time. *Id*.; Tr. at 318-319, 323. She left Ritchie's Market as a cashier in order to work as a home health care aide because she made more money, not because it was too difficult. *Id*. at 322. She explained that she worked at Crystal Care as a nurse's aide until she was fired "because she went to the hospital for back pain." *Id.* at 316. Plaintiff also has her driver's license

and became a state tested nursing assistant. *Id*. at 314, 319. Pursuant to *Bilka*, the ALJ and the consultative examiner were justified in relying upon this vocational experience in assessing Plaintiff's intellectual functioning. Therefore, the undersigned recommends that the Court find that the ALJ's decision is supported by substantial evidence.

## V. CONCLUSION AND RECOMMENDATION

For these reasons, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to find that Plaintiff's impairments do not meet or equal Listing 12.05C.

Date: November 25, 2009　　　　　　　　　　*/s/George J. Limbert*
　　　　　　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).